DANIEL RAY BRIMMAGE, Appellant, v. THE
STATE OF NEVADA, Respondent.

No. 8573

July 27, 1977                              567 P.2d 54

*Morgan D. Harris,* Public Defender, Clark County, for
Appellant.

*Robert List,* Attorney General, Carson City; and *John McGimsey,* District Attorney, Lincoln County, for Respondent.

## OPINION

By the Court, BATJER, C. J.:

Appellant stands convicted by jury of first degree murder (NRS 200.030), robbery (NRS 200.380), and third degree arson (NRS 205.020). Here, he asserts numerous grounds for reversal, none of which has merit.

On December 17, 1974, a burned Whittlesea taxicab was found eight miles north of Pioche, Lincoln County, Nevada. A few days later, the body of the cab's driver, John Mangeris, was found along side a road in Lincoln County. The body had one gunshot wound to the head and eight lacerations of the

face and neck. Mangeris was last seen on December 17, 1974, with his passenger, appellant Daniel Brimmage.

At approximately 10:00 p.m. on December 16, 1974, Mangeris picked up appellant at the Velvet Touch Massage Parlor in Las Vegas. Appellant requested to be taken to a brothel in Lincoln County, and, before departing Las Vegas, the two went to the Whittlesea dispatch yard, refueled, and appellant made a $50.00 deposit for the trip. They arrived at Betty's Coyote Springs Ranch early in the morning on December 17, 1974. Appellant had a pistol in his possession which he temporarily deposited with the proprietor, Betty Armstrong. Upon leaving the brothel, appellant's gun was returned and he then offered Mangeris $10.00 to drive north. Betty Armstrong testified the cab remained in the ranch's driveway for an unusually long time before it turned north on Highway 93. Mangeris was never seen alive again.

1. On December 21, 1974, after the disappearance of Mangeris, but before the discovery of his body, appellant was interviewed by two Las Vegas detectives in Bakersfield, California, where he was in custody on other unrelated charges. During this interrogation, appellant gave a tape recorded statement containing inculpatory remarks about the crime. Appellant contends these statements should have been suppressed because they were involuntary and obtained in violation of Miranda v. Arizona, 384 U.S. 436 (1966).

"The State need prove only that [Brimmage] waived his Fifth Amendment rights against self-incrimination by a preponderance of the evidence." Scott v. State, 92 Nev. 552, 554, 554 P.2d 735, 736–37 (1976). The detectives testified appellant was given the *Miranda* warnings three times and indicated he understood his rights, no promises or inducements were made to appellant, and he did not ask for an attorney. In light of this testimony and after listening to the tape recorded waiver by appellant of his rights, the district court found the State had satisfied its burden of proving appellant's waiver. This finding is supported by substantial evidence and will not be disturbed on appeal. Scott v. State, *id.*

2. With regard to these same statements, appellant also argues the district court erred by not instructing the jury that it should make a determination whether the statements were

freely and voluntarily given. We agree that the failure to so instruct the jury was error. Carlson v. State, 84 Nev. 534, 445 P.2d 157 (1968). However, because the error is not one of constitutional dimension and the question of appellant's guilt or innocence is not close, we conclude the error to be harmless. Grimaldi v. State, 90 Nev. 83, 518 P.2d 615 (1974).

3. We reject appellant's contention that it was prejudicial error for Raymond D. Jeffers, a deputy district attorney from Clark County, to prosecute this case in Lincoln County. Our constitution gives the legislature the power to fix the duties of district attorneys.[1] A district attorney possesses all the powers given him by statute. Southwest Gas v. District Court, 85 Nev. 40, 449 P.2d 259 (1969). Pursuant to NRS 252.070(1), "[a]ll district attorneys are authorized to appoint deputies, who shall have power to transact all official business appertaining to the offices, to the same extent as their principals." Here, Jeffers had been appointed a Lincoln County deputy district attorney by that county's district attorney, had taken the oath of office of deputy district attorney for Lincoln County which was filed with the recorder (NRS 252.070(3)), and represented Lincoln County, not Clark, in the trial of this case. Under these circumstances, Jeffers had the authority to prosecute appellant. NRS 252.070(1).

4. Speculating that the jury might have based its verdict of murder on the conclusion that the victim was killed during a robbery of his personal effects, appellant asserts the district court erred by admitting evidence of the taking of the victim's wallet and ring. No substantial rights of appellant were affected by admitting such evidence, especially in light of the fact the jury convicted him of the robbery of a taxicab from Mangeris, which is sufficient to establish felony murder under NRS 200.-030(2).[2] "[E]rror may not be predicated upon a ruling which

[1]Nev. Const. art. 4, § 32 provides:
"The Legislature shall have power to increase, diminish, consolidate or abolish the following county officers: . . . District Attorneys. . . . The Legislature shall provide for their election by the people, and fix by law their duties and compensation. . . ."
[2]NRS 200.030(2)(b) provides in pertinent part:
"2. Murder of the first degree is murder which is:
"(b) Committed in the perpetration or attempted perpetration of . . . robbery, . . ."

admits or excludes evidence unless a substantial right of the party is affected, . . ." NRS 47.040(1). *See also,* Cosey v. State, 93 Nev. 352, 566 P.2d 83 (1977).

Further, we will not consider appellant's contention that the district court erred by failing to give a cautionary instruction concerning the taking of the victim's personal property because none was requested. *See* Larsen v. State, 93 Nev. 397, 566 P.2d 413 (1977); Gebert v. State, 85 Nev. 331, 454 P.2d 897 (1969).

5. Appellant's next challenge is directed at the sufficiency of his indictment. He contends counts II and III are fatally defective because they failed to apprise him of the charges against him.[3] An indictment is sufficient " 'if the offense is clearly and distinctly set forth in ordinary and concise language . . . in such a manner as to enable a person of common understanding to know what is intended.' " State v. Switzer, 38 Nev. 108, 110, 145 P. 925, 926 (1914). Because the counts on their face stated the violations the State intended to prove and the basic facts upon which it relied, appellant could not have been misled as to his defense or otherwise prejudiced by a lack of a more specific statement. *See* Logan v. Warden, 86 Nev. 511, 471 P.2d 249 (1970).

6. Appellant also argues the district court erred by allowing the indictments to be amended by changing: (1) January 2, 1974 to January 2, 1975; (2) the taxicab model "1970" to

---

[3]Count II provides:

"That the Defendant, DANIEL RAY BRIMMAGE, on or about the 17th day of December, 1974, at and within the County of Lincoln, State of Nevada, did then and there wilfully and feloniously, without authority of law, and with malice aforethought, kill and murder JOHN MANGERIS by shooting at and into the body of said JOHN MANGERIS, with a firearm of less than 12 inches in length during the perpetration of robbery. That the said, JOHN MANGERIS, did on or about the 17th day of December, 1974, as a direct and proximate result of said shooting, die, a violation of NRS 200.030, a Felony."

Count III of the indictment provides:

"That the Defendant, DANIEL RAY BRIMMAGE, did on or about the 17th day of December, 1974, at and within the County of Lincoln, State of Nevada, commit the crime of Robbery by taking and removing by force from the care, custody, and control of JOHN MANGERIS one (1) 1973 Checker Automobile and then and there take and carry away said automobile, a violation of NRS 200.380, a Felony."

1973; and, (3) the word "nukes" to miles. These minor corrections were clerical, not substantive. There is no suggestion that they materially altered the indictments; thus, under such circumstances, we perceive no prejudice to appellant. *See* In re Hironymous, 38 Nev. 194, 147 P. 453 (1915); *cf.* Collins v. State, 88 Nev. 9, 492 P.2d 991 (1972).

7. Appellant's contention he was not given an adequate hearing on his competency to stand trial is without merit. Due to appellant's attempted suicide the day before his trial was scheduled to commence, the district court suspended the trial and appointed two physicians to examine him. NRS 178.405 and 178.415(1).[4] Because appellant's competency had been established at a prior hearing and confirmed by numerous doctors' reports, the parties stipulated that if the two physicians found appellant competent, the matter could be submitted on the physicians' written reports. By a telephone call to the court with appellant's counsel listening in, the physicians answered various inquiries by the court and reported they found appellant competent. During a hearing in open court, the results of the physicians' examinations were disclosed, and the parties stipulated that neither desired to call the doctors to the witness stand for cross examination. In addition to these findings, appellant was examined by a doctor on a day to day basis during his trial. In light of these facts, we conclude the district court more than complied with the statutory mandates of NRS 178.400 *et seq.*

8. Appellant next challenges the sufficiency of the evidence to support his conviction of third degree arson. As he correctly notes, the State has the burden to establish the cab had a value of $25.00 or more. NRS 205.020.[5] Here, the cab,

---

[4]NRS 178.405 provides in pertinent part:
"When an indictment or information is called for trial, . . . if doubt shall arise as to the sanity of the defendant, the court shall suspend the trial of the indictment or information . . . until the question of insanity is determined."
NRS 178.415(1) provides:
"1. The court shall appoint two physicians, at least one of whom is a psychiatrist or otherwise especially qualified, to examine the defendant."
[5]NRS 205.020 provides:
"Any person who willfully and maliciously sets fire to or burns or causes to be burned, or who aids, counsels or procures the burning of any unoccupied personal property of the value of $25 or more and

which also contained a jack and spare tire, was approximately one-year-old, and it is apparent from the record that it was not in a delapidated condition. In the unique factual context of this case, we elect to apply the reasoning enunciated in *Parham v. Commonwealth,* 520 S.W.2d 327 (Ky. 1975), which is factually analogous, where that court said:

> This court will not presume to be more ignorant of the value of automobiles than other laymen. It unquestionably appears that the burned automobile had a value prior to its burning much in excess of $25 and, by its verdict, the jury also found its value to be in excess of $25. Appellant's position in this respect is not well taken. *Id.* at 328.

9.   During their deliberations, the jury asked the court to "explain how robbery is connected with first degree murder." Because of this question, appellant contends the court should have re-instructed the jury on the felony murder rule. "The question of reinstructing the jury is a matter that rests within the sound discretion of the court." Scott v. State, *supra* at 555, 554 P.2d at 737. Here, the jury had been properly and fully instructed on the issue of felony murder, and the trial court as well as the parties apparently concluded that further instruction was unnecessary for no argument concerning the matter appears in the record. In light of these facts, we perceive no abuse of discretion. *See* Scott v. State, *supra.*

10.   Appellant contends the jury instruction given in the language of NRS 175.211(1) on the definition of the term "reasonable doubt" violated his right to fair trial and due process.[6] "Ever since the legislature first enacted Ch. 21, Stats. 1889, which has been carried forward into NRS 175.211(1),

---

the property of another person is guilty of arson in the third degree and, upon conviction thereof, shall be sentenced to imprisonment for not less than 1 year nor more than 6 years."

[6]NRS 175.211(1) provides:

"1.   A reasonable doubt is one based on reason. It is not mere possible doubt, but is such a doubt as would govern or control a person in the more weighty affairs of life. If the minds of the jurors, after the entire comparison and consideration of all the evidence, are in such a condition that they can say they feel an abiding conviction of the truth of the charge, there is not a reasonable doubt. Doubt to be reasonable must be actual and substantial, not mere possibility or speculation."

this court has approved the giving of that statute as an instruction to the jury in a criminal case." Cutler v. State, 93 Nev. 329, 336, 566 P.2d 809, 813 (1977).

11. Although appellant did not request an instruction defining the term "malice aforethought," he now complains of the court's failure to give such an instruction. Even if we assume the issue is cognizable (Gebert v. State, *supra*), we perceive no error because appellant's guilt was based on the theory of felony murder where malice is implied, and the jury was extensively instructed on that subject. *See* Theriault v. State, 92 Nev. 185, 547 P.2d 668 (1976); State v. Mangana, 33 Nev. 511, 112 P. 693 (1910).

12. Although appellant argues his robbery conviction constitutes a conviction of a lesser included offense of felony murder and thus places him twice in jeopardy for the same conduct, in Carmody v. District Court, 81 Nev. 83, 398 P.2d 706 (1965), we held that robbery and murder are separate and distinct offenses, there is no merger of those crimes, and the defense of double jeopardy is inapplicable.

13. Notwithstanding appellant's contentions to the contrary, the record discloses the district court did instruct the jury on the specific intent required for the crimes of robbery and arson.

Appellant's judgment of conviction is affirmed.

MOWBRAY, THOMPSON, GUNDERSON, and MANOUKIAN, JJ., concur.